Mar. 21,                    KIMBALL v. RUSSELL.
  1876.

*Extent against highway surveyor.*

Under Gen. Stats., ch. 66, sec. 24, selectmen have not authority to issue an extent against a highway surveyor for an unexpended balance of highway taxes on his list.

In general, the act of issuing an extent for taxes seems to be ministerial, and, if issued for a larger sum than is due, the process will be no protection to the officer.

FROM HILLSBOROUGH CIRCUIT COURT.

CASE, brought by the plaintiff, who was one of the selectmen, and

also highway surveyor for the year 1870, in the town of Mason, against the defendants, who were selectmen of said town for the year 1871, for improperly issuing against him as such highway surveyor an extent for one hundred dollars, whereby his property was taken and sold at auction to satisfy the same.

Plea, the general issue.

This case was sent to a referee, who found for the plaintiff, and assessed the damages in the sum of $120.17.

At the request of the defendants, the referee reports the following facts by him found proved, and his rulings upon questions of law:

The plaintiff was duly chosen highway surveyor in district No. 3, in said town, in March, 1870, and was qualified by taking the oath of office required by law. April 27, 1870, the warrant with the list of taxes was placed in his hands. The taxes on the list amounted to $1,032.88. The warrant was in the usual form, and in it the selectmen fixed the price to be allowed for labor of different kinds, in accordance with the statute.

The plaintiff received in money and labor on said list the sum of $1,008.05, about half of which sum was in labor and the balance in money. Of the residue, the sum of $14.12 was not collected, for the reason that some of the parties were unknown to the plaintiff, and others had removed from town. No attempt was made to collect any of this amount by distress, and no part of it was abated by the selectmen; but the referee finds that this amount was not collectible, and that the plaintiff acted in good faith, and that he should not be charged with the amount of the same, unless upon the foregoing statement the court shall be of a different opinion.

Of the non-resident taxes, the sum of $10.71 was uncollected, and the plaintiff made no attempt to collect it by sale of the property, or otherwise; and the referee finds that the same were illegally assessed, and that the surveyor should not be charged with their amount.

In June, 1871, the defendants called on the plaintiff, in accordance with the statute, to render an account of the taxes on his list. June 10, 1871, the plaintiff showed to the defendants an account which had been kept in a memorandum-book, in which he had pasted the warrant with the tax-list; and they examined it, and objected to sundry items. July 3, 1871, the plaintiff furnished them with a statement showing the total amount received, but not giving any items of the expenditure; and a short time before the extent was issued he furnished them with a detailed statement of the expenditures. This account showed that the plaintiff had charged himself with the sum of $1,008.75, as received on said list, which sum the referees find as a fact was all he did receive thereon; and that he claimed an allowance for labor performed and materials furnished to the amount of $1,043.64, showing a balance in his favor of $35.59.

Among the items objected to was the sum of $46.75, paid for a scraper. The evidence tended to show that there was no scraper belonging in the district which could be obtained for the use of the

district, and for this reason the plaintiff purchased it, and paid for it with the funds in his hands belonging to the district. The price paid was reasonable, and the plaintiff acted in good faith, and as he supposed he was authorized to do ; and the referee finds that he should be allowed that sum, unless the court, upon the foregoing facts, shall be of contrary opinion.

The defendants objected to the sum of $13.40, allowed E. B. Barrett for work done in previous years and under the direction of a former surveyor, and for which he had not been paid. The referee finds that this claim of the plaintiff was not properly charged in his account, and he is not entitled to be credited for it on his account, unless, upon the foregoing facts, the court should be of a different opinion.

The defendants objected to the sum of $18.50, charged by the plaintiff in his account for work done in the month of April, 1871, after he was chosen and qualified, and before the warrant was placed in his hands. The evidence tended to show that the work was necessary, and that the charges were reasonable ; and the referee finds that the plaintiff should be allowed for the same, unless, upon the foregoing facts, the court should hold otherwise.

The plaintiff credited himself with three items, amounting to $47.50, which were for lumber and stone for the repair of two bridges and a culvert in said district. The evidence tended to prove that the selectmen did not fix the price to be paid for the same, but that the plaintiff furnished a part and purchased a part ; that what he furnished from his own lumber he charged a reasonable price for, and that which he purchased he paid a fair and reasonable price for; and the referee finds that he should be allowed for the same, unless, upon the foregoing facts, the court shall hold otherwise.

The plaintiff credited himself, and claimed to be allowed, for his own labor for twenty-seven days and the use of his tools, $3 per day, and for thirteen days $2.50 per day. The evidence tended to show that the plaintiff furnished all the tools needed, except ploughs and a scraper. They consisted of carts, chains, drags, and such-like tools. There was no price fixed in the warrant for the use of such tools, but the other selectmen, for the year 1870, verbally fixed the price to be allowed for *his* labor at $2.50 per day; and the referee finds that, under all circumstances, the charges of the plaintiff for the use of his tools and for his labor were just and reasonable, and should be allowed to him, unless, upon the foregoing facts, the court should be of a different opinion.

The plaintiff employed a stone-mason at $3 per day to take charge of the stone-work upon a certain bridge in said district, which sum he claimed to be credited with. The evidence tended to show that there was no person in the district, suitable to take charge of such work, whose services could be obtained for less than that price, and the plaintiff was directed by one of the other members of the board for that year to employ a suitable person to do the work, and put the amount paid into his account ; that he did employ such a person, and no more than a fair price was paid ; and the referee finds that he should be allowed the sums so

charged, unless, upon the foregoing facts, the court should be of a different opinion.

The referee ruled that, as a matter of law, if the defendants, when they issued the extent, issued it for a greater amount than was actually due at the time when it was issued, they in so doing exceeded their authority—were trespassers *ab initio*, and were liable in this form of action; to which ruling the defendants excepted.

Ordered, that the questions arising on the foregoing case be transferred to the superior court; judgment to be rendered for the plaintiff, or the defendants, as the court shall be of opinion upon the foregoing facts.

*Wadleigh & Wallace*, for the plaintiff.

*Burns*, for the defendants.

LADD, J. The questions in this case arise upon the report of the referee, and may be considered in the order in which they are there stated. (1) The referee finds that a sum of $14.12 was not collected, for the reason that some of the parties were unknown to the plaintiff, and others had removed from the town. He further finds that this sum was not collectible; that the plaintiff acted in good faith, &c. This would seem to furnish reason for an abatement of taxes by the selectmen; but, until an abatement was made, I think it furnished no reason why the surveyor might not be proceeded against by extent with respect to these taxes, as well as any others in his list. I think the holding of the referee on this point was wrong. (2) As to the $10.71 non-resident tax, the referee finds that it was illegally assessed, and that is a sufficient reason why the plaintiff should not be proceeded against for not collecting it. (3) Upon the facts reported, I am of opinion that there was not such a neglect by the plaintiff to account as made him liable to an extent for that reason alone, according to the provisions of Gen. Stats., ch. 66, sec. 24. (4) I think the $46.75 paid by the plaintiff for a scraper could not legally be set off in his account to the selectmen against the taxes in his list. My conclusion on this point is based on the fact that there is no statute which authorizes a highway surveyor to invest the public funds in such an implement. The money received by him for taxes does not belong to the district, and I do not find any ground on which it can be held that highway districts can possess and own any kind of property. The reason is, that they have none of the attributes or functions of corporations. They are merely divisions of the highways and highway taxes in town, made by the selectmen from year to year for the sake of convenience and system in keeping the roads in repair. If it be said that the title to the scraper when purchased in this way might be in the town, the answer is, that a highway surveyor cannot be regarded as the agent of the town to make such a purchase on their behalf. Such duties devolve upon the selectmen. (5) I think the holding of the referee, with

respect to the $13.40 allowed to E. B. Barrett, was right. Mr. Barrett could not have a bill against the highway district, for the reason already suggested, that the district was not a legal person having power to make a contract. (6) As to the sum of $47.50, paid for lumber and stone for the repair of bridges, &c., I think the referee was right in allowing it. It is true, "highway surveyors may purchase timber, plank, and other materials necessary for the repair of highways and bridges in their districts at the expense of the town"—Gen. Stats., ch. 66, sec. 16; but I think it does not follow that they may not purchase such materials with money which they have received on the taxes committed to them for collection, when such taxes are sufficient for that purpose. This point was expressly left undecided in *Palmer* v. *Carroll*, 24 N. H. 314, 318, though the conclusion of the court in that case would seem to have been much strengthened by so holding. Reading all the statutes relating to this point together, it seems to me they show a very plain intention on the part of the legislature that the highways in such district in town shall be maintained and kept in repair by the taxes specially raised for that purpose, so far as they will go; at any rate, that a purchase by the surveyor of such materials, with money received by him on his tax-list, will not be a misappropriation of the funds, and that he should be allowed the sums so expended in good faith on his settlement with the selectmen. (7) I see no reason why the amount charged by the plaintiff for his own labor and the use of his tools, which the referee finds was just and reasonable, was not properly allowed. (8) The hiring of a stone-mason was also within the scope of the surveyor's duty, and the price paid being reasonable, that sum was rightly allowed.

Applying these views we have the following result: Amount of legal tax not collected nor abated, $14.12; paid for scraper, $46.75; paid Barre'' $13.40;—total, $74.27. From this deduct the balance in the plaintiff 'avor, as shown by his own account, $35.59, we have $38.68 as the .lance which the plaintiff was legally liable to account for and pay into the town treasury on the expiration of his term of office. The selectmen issued an extent against him for $100, and his property was taken and sold in satisfaction of the same. It is plain, therefore, that he has suffered a wrong. The question is, whether he can have a remedy in this action.

The referee held that if the extent issued by the defendants was for a greater amount than was due at the time it was issued, they exceeded their authority, were trespassers *ab initio*, and were liable in this form of action. Before considering that question, I think it may be well to examine the statutes, and see whether the selectmen had authority to issue an extent, provided they had kept within the sum actually behind upon the list. They probably supposed such authority was conferred upon them by Gen. Stats., ch. 66, sec. 24. That section is as follows: " Surveyors of highways shall, in June next after the expiration of their term of office, account to the selectmen for the taxes on their lists, and pay any unexpended balance into the town treasury;

and upon their neglect to account or pay such balance, proceedings may be had against them by extent, as in case of delinquent collectors of taxes."

What may be done in case of delinquent collectors of taxes is pointed out in Gen. Stats., ch. 59. Section 1 of that chapter is as follows : " The state treasurer, and each county and town treasurer, may issue extents under their hands and seals respectively, in cases authorized by law ; and such extents shall be deemed executions against the person and property." Section 2 provides for extents against towns in certain cases ; section 3, for extents against selectmen neglecting to assess a state or county tax ; section 4,—" Any collector to whom a tax is committed, who neglects to pay the same to the state, county, or town treasurer, or to the selectmen, or other person to whom the same is payable, within the time limited in his warrant, * * shall be liable to an extent ; " section 5,—" If any collector, to whom any tax payable to the state or county treasurer is committed, neglects to pay the same within the time limited in his warrant, and the selectmen of the town shall judge that there is danger that such collector will abscond or be unable to pay the same, they may issue an extent against such collector for the taxes in arrear ; " section 6,—" No extent shall be issued by the state or county treasurer against any collector, after notice given by the selectmen that they have issued an extent against him as aforesaid * * ; " section 16,—" Selectmen, issuing any extent against a collector, shall indemnify him against all costs and expenses arising to him by reason of any extent issued against him by the state or county treasurer for the same tax."

What authority is here given selectmen to issue an extent, except in the case mentioned in section 5, which has relation only to state and county taxes ? Any unexpended balance on the list of a highway surveyor is to be paid, not to the selectmen, but into the town treasury. Gen. Stats., ch. 66, sec. 24. With respect to town taxes, the power to issue extents is, by sec. 1, ch. 59, Gen. Stats., lodged with the town treasurer ; and section 16 of the same chapter, which requires the selectmen to furnish the indemnity there spoken of, is not altogether sensible if it be understood that they may issue extents for other taxes than those mentioned in section 5. I am of opinion that selectmen have no authority by statute to issue extents against delinquent collectors for any other than state and county taxes, when, in their judgment, there is danger that such collector will abscond, or be unable to pay the same, as provided in section 5 ; and I think the decision of this case might properly be put upon that ground. But as this point was not taken at the trial, and has not been argued by counsel here, I have examined the ruling made by the referee sufficiently to become satisfied that, even admitting the authority of the selectmen to issue an extent for the unexpended balance of the tax, the ruling was right.

An extent is an execution,—expressly declared to be so, when issued by state, county, and town treasurers—Gen. Stats., ch. 59, sec. 1 ;

and it can be nothing else when issued by selectmen. Probably it is in some way descended from the old writ of *extendi facias*, whereby, after *magna charta* and the statutes of 33 H. 8, ch. 39, the king's debts were collected. 2 Inst. 19. But whatever its history, its original form and use, I suppose it will not be contended that, in case of an extent issued by virtue of any statute of this state, there is to be a hearing after the process has been sent out. It certainly is in the nature of final process, and not mesne process. The sum of money to be levied is finally determined in some way before and not after the document is placed in the hands of the sheriff.

The history of litigation in this state, to go back no further than my own brief judicial experience extends, shows that controversies between towns and their tax-collectors, in the settlement of their accounts, are not uncommon, and that such cases are often complicated and difficult in the extreme. It would be somewhat anomalous, to say the least, if the legislature had provided that in such cases one town officer, or one board of town officers, might render a final judgment upon the rights and liabilities of another officer of the same town, and issue an execution to carry such judgment into effect. When such a case comes before a jury, not only all citizens, but all tax-payers, in the interested town, are carefully excluded from the panel. It is to be argued that the legislature intended to clothe the selectmen, who represent the town, whose duty it is to maintain the rights and interests of the town, with power to determine, as judges, the very matter in which they are thus bound to act for one of the litigating parties. The monstrous absurdity, to say no more, of the proposition renders such a conclusion impossible.

So far as regards the sum of money to be inserted in the extent, the issuing of that process is, in my judgment, no more a judicial act than the issuing of an execution by the clerk of the courts; and therefore, when it is resorted to, the officer or officers issuing it must take care to keep within the authority conferred upon them by law. Ordinarily it will be easy for them to do so. State, county, and town treasurers have the means of ascertaining with certainty whether the amount of the tax has been paid over to them, as required by law; and when part of the tax has been paid they have only to compare the amount paid with the amount of the warrant and list, to ascertain with accuracy the amount behind. But when, as in this case, a dispute arises, and the selectmen, or treasurer, as the case may be, whose interest is directly antagonistic and hostile to that of the collector, undertake to decide it, and issue final process to be levied upon the goods, lands, or body of their opponent, I think they must be careful to keep strictly within the limits of their power, or their proceedings will be void. For these reasons I think the referee was right in holding that if the extent was for a greater amount than was actually due, the whole proceeding fails, and cannot avail the defendants as an answer to the suit. I see no legal objection to a recovery in this form of action, and my conclusion is that there should be judgment on the report for the plaintiff.

CUSHING, C. J. It appears to me that by Gen. Stats., ch. 59, the power to issue extents in a case like this is in the town treasurer, and not in the selectmen. By Gen Stats., ch. 66, sec. 24, the collector is bound to account with the selectmen, and pay over any unexpended balance to the town treasurer, and, failing to do so, is to be proceeded against in the same manner as a delinquent collector; but by ch. 56, with the exception of the single case where there is danger that the collector may abscond, the selectmen have no authority to issue an extent at all that I can find in the statute. There seems a special fitness in the provision that the surveyor shall account with the selectmen, and the extent for the balance ascertained shall be issued by another officer. The extent, then, according to my view of the matter, having been issued by the selectmen without any authority, cannot justify them in any degree.

SMITH, J., concurred.

According to the provisions of the case transferred, the plaintiff is entitled to

*Judgment on the report.*